**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**DOUGLAS GODNIG,**                       :

    **Plaintiff**                       :

                               **CIVIL ACTION NO. 3:15-2292**

                               :

    **v.**                       :

                               :        **(JUDGE MANNION)**

**STROUD AREA REGIONAL POLICE**
**DEPARTMENT,** *et al.*                       :

    **Defendant**                       :

## MEMORANDUM

Pending before the court is the Partial Motion to Dismiss filed on behalf of defendants Christopher Kelly, Keith Strunk, the Stroud Area Regional Police Department, and the Borough of East Stroudsburg. (Doc. 3). For the reasons set forth below, the motion will be granted in part and denied in part.

## I.    FACTUAL AND PROCEDURAL HISTORY[1]

The plaintiff's Complaint relates to events that occurred on August 26, 2013, when he was arrested for possession with the intent to distribute by officers of the Stroud Area Regional Police Department ("SARPD"). (Doc. 1, Ex. 2, ¶¶ 23-24) (hereinafter "Compl."). Following his arrest, in an attempt to receive leniency, the plaintiff agreed to assist officers of the SARPD and

---

[1]The facts alleged in plaintiff's complaint must be accepted as true in considering the defendant's motion to dismiss. *See* Dieffenbach v. Dept. of Revenue, 490 Fed. Appx. 433, 435 (3d Cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005).

Attorney General's Office in arresting plaintiff's "supplier." *Id*. ¶ 25. Following an unsuccessful operation to arrest the "supplier," the plaintiff was placed in a holding cell at the SARPD. *Id*. ¶ 27. While in a holding cell, "Officers Shelly, Strunk, Laurito and/or Sedor" began to threaten him with a lengthy prison sentence. *Id.* ¶ 28. The plaintiff began to panic and subsequently started yelling and kicking the holding cell door. *Id*. ¶ 29. Due to the plaintiff's behavior, the officers entered the cell in an attempt to subdue him. *Id*. ¶ 30. Plaintiff alleges he was handcuffed, "forced to the ground," and then "tazed several times and assaulted" by Officers Shelly, Strunk, Laurito and Sedor. *Id.* ¶¶ 31-32. Plaintiff further states that the officers' conduct caused "severe and serious personal injuries." *Id*.¶ 32.

As a result of the aforementioned circumstances, the plaintiff filed the instant action in the Court of Common Pleas of Monroe County, Pennsylvania, on October 29, 2015. (Compl.). The Complaint was filed against the SARPD, the Borough of East Stroudsburg, Officers Shelly and Strunk of the SARPD, the Commonwealth of Pennsylvania, the Attorney General of the Commonwealth of Pennsylvania, and Officers Laurito and Sedor of the Attorney General's office, and it includes claims for excessive force in violation of the Fourth Amendment, negligence, and negligent infliction of emotional distress. (Compl.). All defendants filed a notice of removal on November 27, 2015, (Doc. 1), and the case was removed to the Middle District of Pennsylvania. *See also* Doc. 2.

Defendants Commonwealth of Pennsylvania, the Attorney General of

the Commonwealth of Pennsylvania, and Officers Laurito and Sedor, entered into a stipulated agreement with the plaintiff on December 18, 2015, in which the parties agreed to voluntarily dismiss Counts II and V-VII as to defendant Officers Laurito and Sedor, and also Counts III and IV as to defendants Commonwealth of Pennsylvania and the Attorney General of the Commonwealth. (Doc. 5). The court approved the agreement on the same day. (Doc. 6). On December 23, 2015, the remaining defendants, SARPD, Officer Shelly, Officer Strunk, and the Borough of East Stroudsburg, entered into a stipulated agreement with the plaintiff to withdraw and strike the demand for punitive damages from Counts III and IV and further to withdraw and strike Counts II and V from the plaintiff's complaint in their entirety. (Doc. 9). The Court approved the stipulation on January 5, 2016. (Doc. 11).

On December 4, 2015, defendants SARPD, Officer Shelly, Officer Strunk, and the Borough of East Stroudsburg (hereinafter "the defendants") filed the instant Partial Motion to Dismiss on the grounds that the plaintiff failed to properly state a claim of excessive force against the Officers Shelly and Strunk and failed to properly identify a custom, practice or policy that would support municipal liability against the SARPD and the Borough. (Doc. 3). Finally, on December 28, 2015, the plaintiff filed a Brief in Opposition to the defendants' motion to dismiss. (Doc. 10).

As both the defendants and the plaintiff have submitted briefs to the court, the instant motion to dismiss is now ripe for disposition.

3

## II.    STANDARDS OF REVIEW

### A.    Rule 12(b)(6)

The defendants' motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. *Id.* The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (internal quotations and brackets omitted) (quoting *Twombly,* 550 U.S. at 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v.

McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See, e.g.*, Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

## B.    Section 1983

Section 1983 does not bestow substantive rights, but instead creates a remedy for violation of a person's constitutional rights. Gonzaga Univ v. Does, 536 U.S. 273 (2002). The statute provides:

> Every   person   who,   under   color   of   any   statute,

5

> ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. §1983.

To establish a claim under section 1983, a person must prove that someone deprived him of a constitutional right while acting under the color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d. Cir. 1996). Liability under section 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or actual knowledge and acquiescence. See Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997) (overturned on other grounds) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d. Cir. 1988)). Acquiescence exists where "a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so." Festa v. Jordan, 803 F.Supp.2d 319, 325 (M.D. Pa. 2011) (quoting *Robinson*, 120 F.3d at 1294).

A municipality is a "person" for purposes of section 1983. *See* Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown 520 U.S. 397, 403 (1997) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 689 (1978)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of

*respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); *see also* Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (citing Rode). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207; *accord* Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

## III.   DISCUSSION

In their Partial Motion to Dismiss, the defendants argue that several claims in the plaintiff's complaint are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Specifically, the defendants posit that the plaintiff fails to state a claim for excessive force under Count I of the complaint because he fails to "positively identify the moving defendants' actions" and provide the necessary specifics relating to each individual defendant's conduct. (Doc. 7, pp. 6-8). In addition, the defendants argue that the plaintiff has failed to plead the elements required to establish municipal liability in either Count III or Count IV, and therefore, fail to state a claim for these two Counts. (Doc. 7, pp. 9-14). The court will address these two grounds for relief in turn, below.

### A.   Count I – Section 1983 Fourth Amendment Violation

The court will first examine whether Count I of the plaintiff's Complaint pleads facts sufficient to state a claim against defendant Officers Shelly and Strunk. In Count I, the plaintiff alleges that the force used by Officers Shelly

7

and Strunk in subduing him was excessive, objectively unreasonable, and a violation of section 1983 of the United States Code. (Compl., p. 6). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan,443 U.S. 137, 144 n.3 (1979)). "In addressing an excessive force claim brought under section 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Id.*

"Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Graham v. Connor, 490 U.S. 386, 394 (1989). The Fourth Amendment provides protection for "those actions which occur between arrest and pre-trial detention." Donahue v. Gavin, 280 F.3d 371, 381 (3d Cir. 2002). "Thereafter, the Due Process Clause of the Fourteenth Amendment provides continuing protection." Bodnar v. Wagner, No. CIV.A. 3:07-CV-2038, 2010 WL 56097, at *6 (M.D. Pa. Jan. 5, 2010) (citing James v. York County Police Dep't, 160 Fed. Appx. 126, 131 (3d Cir. 2005)). "The majority of circuits hold that the Fourth Amendment applies until an individual arrested without a warrant appears before a neutral magistrate for arraignment or for a probable cause hearing or until the arrestee leaves the joint or sole custody of the arresting officer or officers." Fuchs v. City of Farrell, No. CIV.A. 10-998, 2011

WL 1706541, at *6 (W.D. Pa. Apr. 7, 2011), *report and recommendation adopted*, No. CIV.A. 10-998, 2011 WL 1748188 (W.D. Pa. May 4, 2011) (citing Aldini v. Johnson, 609 F.3d 858, 864 n.6 (6th Cir. 2010)). However, the Third Circuit has yet to clearly define when the transition occurs from arrest to pre-trial detention. United States v. Johnstone, 107 F.3d 200, 207 (3d Cir. 1997) ("Where the seizure ends and pre-trial detention begins is a difficult question.").

The Third Circuit has clearly held that the Fourth Amendment applies at least during the arrest and during transportation of the arrestee to the police station. *See* Groman v. Twp. of Manalapan, 47 F.3d 628, 633-34 (3d Cir. 1995); *see also Bodnar*, 2010 WL 56097, at *6-7; Dull v. W. Manchester Twp. Police Dep't, No. CIV.A. 1:07-CV-0307, 2008 WL 717836, at *9 (M.D. Pa. Mar. 17, 2008). Many district courts within this Circuit have aligned with the majority of other Circuits and found that "the Fourth Amendment continues to apply beyond the incident of arrest and possibly until arraignment." *Fuchs*, 2011 WL 1706541, at *6 (collecting cases); *see also* French v. Squire-Tibbs, No. CIV. 11-1009 RBK/KMW, 2013 WL 3283869, at *2 n.7 (D.N.J. June 26, 2013); Callaway v. New Jersey State Police Troop A, No. CIV.A. 12-5477 RBK, 2013 WL 1431668, at *4 (D.N.J. Apr. 9, 2013); *Bodnar*, 2010 WL 56097, at *6-7; Schneyder v. Smith, 709 F. Supp. 2d 368, 378 (E.D. Pa. 2010); Morrison v. Phillips, No. CIV 06-812(JBS), 2008 WL 4308215, at *11 n.10 (D.N.J. Sept. 16, 2008). Having reviewed the abovementioned cases as well as others within Circuit, the court agrees with our sister courts that the Fourth

9

Amendment applies until arraignment.

As alleged in the Complaint, the plaintiff was taken to the SARPD, where he was "placed under arrest and brought into a holding cell." (Compl., ¶¶ 26-27). These facts clearly demonstrate that the plaintiff was an arrestee detained in a holding cell prior to arraignment. Pursuant to the case-law outlined above, this court finds that the plaintiff, having not yet been provided a probable cause hearing or arraigned, is still protected by the Fourth Amendment. His detainment is not yet a *pre-trial detainment*, which would trigger the protections of the Fourteenth rather than the Fourth Amendment.

Finding that the plaintiff's excessive force claim is governed by the Fourth Amendment, the court must analyze the claim under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386 (1989). "[W]hether the force used . . . is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (internal quotations omitted). More specifically, the "objective reasonableness" standard requires the court to consider "whether under the totality of the circumstances, the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004) (citing *Graham*, 490 U.S. at 397). Relevant factors to consider include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety

10

of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The Third Circuit has articulated additional factors that are relevant to its assessment of "objective reasonableness," which include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).

Here, the plaintiff argues that the actions of Officers Shelly and Strunk, along with Officers Laurito and/or Sedor, were objectively unreasonable and in violation of the rights afforded to him by the Fourth and Fourteenth Amendments. Plaintiff states that after being threatened with a lengthy prison term, he began to panic and subsequently began to yell and kick the holding cell door. (Compl., ¶¶ 28-29). The facts demonstrate that the plaintiff yelled and kicked the holding cell door in such a way that the police officers may have believed he broke the lock on the door and was no longer safely confined. All four defendant officers then entered the holding cell to subdue the plaintiff. *Id*. Plaintiff claims that after being placed in handcuffs, he was forced to the ground and tazed repeatedly by the four defendant officers in a manner that caused severe and serious injuries. (Compl., ¶¶ 31-32). The plaintiff includes a lengthy list of injuries that he suffered as a result of this incident. (Compl., ¶ 41). These injuries include:

a)   Headaches, blurred vision, post concussion syndrome;
b)   Right arm/right elbow nerve damage, ulnar nerve lesion, lateral epicondylitis, right ulnar neuropathy, right wrist cellulitis, central traumatic TFCC tear, cubital tunnel syndrome, staph infection;
c)   A right hip sprain strain, a right hip dislocation, right hip acetabular labrum tear, arthalgia of the right pelvis/hip/femur;
d)   Lumbar sprain/strain, lumbar radiculopathy;
e)   Post traumatic stress disorder;
f)   Injury to his soft tissues, including, but not limited to injury of the skin, muscles, blood vessels, nerves and ligaments in proximity to the above described areas and other parts of his body, including his head, arms, legs and torso; and
g)   An aggravation of any of the within preexisting conditions.

(Compl., ¶ 41). The court additionally notes that the plaintiff was not arrested for a violent crime, solely for possession with intent to distribute, and during the incident, the plaintiff was unarmed and confined in a holding cell at the police department. The entire incident occurred inside the police department, and there is no indication that anyone other than the plaintiff posed a threat to the officers during the incident. Taking these factual allegations to be true, the court finds that the defendant officers' conduct may not be objectively reasonable and therefore may amount to excessive force in violation of the Fourth Amendment. Despite the fact that the plaintiff may have damaged the lock on the holding cell, the court finds it unreasonable that four officers would then be necessary to subdue the plaintiff, and that, after handcuffing him, it would be necessary to taze him until he suffered the injuries listed above. The plaintiff has, therefore, alleged facts sufficient to state a claim for excessive force against the defendant officers.

However, in their Partial Motion to Dismiss, the moving defendants argue that the plaintiff's complaint fails to properly identify the involvement of

each officer, and that this lack of specificity amounts to failure to state a claim under Rule 12(b)(6). (Doc. 7, p. 8). "The Third Circuit has held that a civil rights complaint is adequate where it states the conduct, time, place and persons responsible." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citing Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980)). The defendants cite *McNeil v. City of Easton* in support of their argument that the complaint is lacking in properly identifying the officers responsible for the excessive force. 694 F.Supp.2d 375 (E.D. Pa. 2010). However, this argument is unpersuasive; the facts of *McNeil* are distinguishable from the facts alleged in the instant action. In *McNeil*, the plaintiff was unable to allege the names of *any* of the officers involved in his excessive force claim. Instead the plaintiff simply claimed the "one of the officers used excessive force." *Id.* at 395. Subsequently, the *McNeil* Court granted the defendant's motion for summary judgment in favor of the defendant, holding that a claim of excessive force against an "unidentified Easton police officer" cannot be sustained as a matter of law. *Id.* There, the court noted where the plaintiff fails to identify which officer is responsible for an alleged excessive force claim, there is no evidentiary basis on which to hold a defendant liable. *Id.* at 398-99. Here, the plaintiff has plead more details than the *McNeil* plaintiff; he has properly identified four officers—Officers Shelly, Strunk, Laurito and Sedor—as responsible parties and further identified that the incident in question occurred on August 26, 2013 at the SARPD. (Compl., ¶¶ 31-32). Accordingly, the plaintiff has adequately alleged the time, place, and personal involvement of

*each* of the defendant officers, and therefore has fulfilled the specificity requirements dictated by the Third Circuit.

Because the plaintiff has plead facts that fulfill the specificity requirement, and has also plead facts that, taken to be true, may show that the defendants' use of force was objectively unreasonable, the court finds that the plaintiff has alleged facts to establish a claim for excessive force that can survive a motion to dismiss. Therefore, the defendants' motion to dismiss the plaintiff's excessive force claim will be denied.

### B.    Fourteenth Amendment Due Process

Plaintiff also appears to allege that the officers' use of force during their encounter in the holding cell deprived him of substantive due process rights under the Fourteenth Amendment. (Compl., ¶ 35). "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)) (internal quotations omitted); Tolan v. Fedorchak, No. 07–3870, 2009 WL 3128431, at *5 (M.D. Pa. Sept. 28, 2009) ("Here, a specific Constitutional provision, the Fourth Amendment, 'provides Plaintiff with an explicit textual source of constitutional protection' against unlawful seizures. This Court, therefore, need not separately address Tolan's Fourteenth Amendment due process claim." (internal citations omitted).

14

In this case, the Fourth Amendment protection provides an explicit textual source of constitutional protection, as courts have held that the Fourth Amendment, as thoroughly discussed above, applies to an officer's use of excessive force during an arrest until arraignment. *Graham*, 490 U.S. at 394-95; Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260–61 (3d Cir. 2010). The plaintiff's claim of excessive force relates to a Fourth Amendment violation, and therefore, the Fourth Amendment guides our analysis. This court therefore finds that any Fourteenth Amendment claims cannot stand.

However, having examined the Complaint, the court finds that the plaintiff may have referred to the Fourteenth Amendment solely for its incorporation function rather than to invoke substantive due process protections. The Fourth Amendment is made applicable to the states and the conduct of state officials by the Fourteenth Amendment's Due Process Clause. Williams v. Papi, 30 F.Supp.3d 306, 312 (M.D.Pa. 2014) (citing Terry v. Ohio, 392 U.S. 1, 8 (1968)). By mentioning the Fourteenth Amendment, the plaintiff simply creates a proper foundation from which to assert his Fourth Amendment claim of excessive force against state and municipal actors. Ultimately, interprets any reference to the Fourteenth Amendment in the Complaint as invocation of the incorporation doctrine, and insofar as the plaintiff included any claims based upon substantive due process under the Fourteenth Amendment, these claims will be dismissed.

### C.   Count III and Count IV – Borough of East Stroudsburg's Municipal Liability[2]

The defendants also move to dismiss Counts III and IV of the complaint,

which relate to the Borough of East Stroudsburg's municipal liability, for failure

to state a claim. Count III of the complaint includes claims that the Borough

of East Stroudsburg failed to properly train and/or discipline their police

officers and agents in violation of his Fourth, Fifth, and Fourteenth

Amendment Rights. (Compl., ¶¶ 49-51). Count IV of the complaint includes

allegations that the Borough of East Stroudsburg has permitted a widespread

and persistent pattern of unconstitutional conduct. *Id*. at 16-17. In their Partial

Motion to Dismiss, the defendants argue that the plaintiff fails to "adequately

allege the elements of a Monell claim in either Count III or Count IV." (Doc. 7,

p. 13). More specifically, the defendants argue that the complaint is "entirely

devoid of any <u>facts</u> that identify a municipal policy or custom to support the

---

[2] The Court notes that a municipal police department cannot be sued separately from the municipality of which it is a part because it is not a separate independent entity. *See* Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 n.4 (3d Cir. 1997); Debellis v. Kulp, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001) ("In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity."). Therefore, though the Borough of East Stroudsburg and SARPD are listed as defendants in the caption of this case, only the Borough of East Stroudsburg may be held liable pursuant to section 1983. Given the parties' stipulation, the only remaining claims which seek to hold the SARPD liable are Counts III and IV for municipal liability under section 1983. As stated, the SARPD cannot be held liable for those claims, and as a result, the SARPD will be dismissed from the case.

plaintiff's claims." *Id*. at 14 (emphasis in original). The plaintiff, on the other hand, argues that he has indeed plead facts sufficient to establish a custom of unconstitutional conduct on the part of the defendants, by demonstrating a pattern of constitutional violations. (Doc. 10, pp. 4-6).[3]

To establish a claim under section 1983, one must prove that a person deprived him of a constitutional right while acting under the color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). Liability under section 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or actual knowledge and acquiescence. *See* Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997) (overturned on other grounds) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Acquiescence

---

[3]The plaintiff's argument in opposition to the defendants' motion to dismiss the municipal liability claims primarily focuses on the principle that a plaintiff need not demonstrate a written or codified policy in a *Monell* claim in order to succeed on the claim. (Doc. 10, p. 5). Instead, the plaintiff asserts, a custom arising from patterns of conduct is sufficient to satisfy the requirements of a *Monell* claim. As the court's summary of the relevant law below demonstrates, the plaintiff is correct in his argument. However, the plaintiff argues that the defendants, in their motion, would require the plaintiff to point to a written or codified policy to support his claim. *Id.* The defendants do not request that the plaintiff identify a written or codified policy in any of their submissions to the court. Instead, the defendants argument focuses primarily on the sufficiency of the plaintiff's factual allegations and whether they demonstrate a policy *or custom,* focusing largely on whether the plaintiff has included factual allegations to demonstrate custom through a pattern of violations. (Doc. 7, pp. 9-14). Thus, the plaintiff's characterization of the defendants' grounds for the motion is inaccurate and need not be addressed at length below.

exists where "a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so." Festa v. Jordan, 803 F. Supp. 2d 319, 325 (M.D. Pa.2011) (quoting *Robinson*, 120 F.3d, at 1294 ).

A municipality is a "person" for purposes of section 1983. *See* Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 689 (1978) ). But, as stated previously, section 1983 does not allow municipal liability under a theory of *respondeat superior*. *Id.*; *see also* Brickell v. Clinton County Prison Bd., 658 F. Supp. 2d 621, 626-27 (M.D. Pa. 2009). A municipality is not liable under section 1983 merely for employing someone who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a *policy or custom* that led to or caused the violation. *Brown*, 520 U.S. at 403. For the purposes of meeting the *Monell* standard, a custom exists when "practices of state officials [are] so permanent and well settled as to virtually constitute law." Kean v. Henry, 523 Fed. Appx. 879, 881 (3d Cir. 2013). The plaintiff bears the burden of identifying the policy or custom. *Id.* This rule ensures that a municipality will only be liable where it is the "moving force" behind the plaintiff's injury. *Id.*

### 1.    Count III – Failure to Train/Discipline

Count III of the complaint includes a municipal liability claim against SARPD that can be divided into two categories: 1) failure to train police

officers and agents; and 2) failure to adequately discipline police officers and agents. (Compl., ¶¶ 48-56). Each of these categories will be discussed in turn.

The court will first examine the plaintiff's failure-to-train claim. If the conduct at issue relates to a failure to train or supervise municipal employees, "liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train. Connick v. Thompson, 563 U.S. 51, 62 (2011) (citing Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 409 (1997)); *see also* Carswell v. Borough of Homestead, 381 F.3d 235, 244–45 (3d Cir. 2004) (deliberate indifference "typically requires proof of a pattern of underlying constitutional violations."). The Supreme Court has also held that, under narrow circumstances, a plaintiff may successfully prove a failure-to-train claim without identifying a pattern of constitutional violations, but instead by showing that "the need for more or different training is *so obvious*, and the *inadequacy so likely* to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989) (emphasis added). "Liability in single-incident cases depends on the likelihood that the situation will recur and the predictability that an officer

19

lacking specific tools to handle that situation will violate citizens' rights." Thomas v. Cumberland Cty., 749 F.3d 217, 223-24 (3d Cir. 2014) (internal quotations omitted).

In addition to demonstrating deliberate indifference through one of the two methods stated above, the plaintiff must further show that the alleged deficiency in training "actually causes injury." City of Canton, 489 U.S. at 390. "In analyzing causation, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. Liability cannot rest only on a showing that the employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury. Rather, the causation inquiry focuses on whether the injury could have been avoided had the employee been trained under a program that was not deficient in the identified respect." Thomas v. Cumberland Cty., 749 F.3d 217, 226 (3d Cir. 2014) (internal citations and quotations omitted). Again, the municipality's conduct must be a "moving force" behind the constitutional violation at issue. Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997).

In the instant Complaint, the plaintiff alleges that the Borough of East Stroudsburg is liable under a theory of failure-to-train. Specifically, the plaintiff asserts that the training practices of the Borough of East Stroudsburg are inadequate for "[f]ailure to properly train . . . [their] officers/agents on the United States Constitution, the Fourth Amendment and the proper uses of excessive force," as well as "[f]ailure to properly train . . . [their] officers/agents

to avoid or plan to avoid use of excessive force." (Compl., ¶ 50). The plaintiff also proffers that this failure amounts to a custom because the "pattern of training and discipline deficiencies was so pervasive as to constitute 'customs' with the force of law," (Compl., ¶ 53), and further that the defendants, for years prior to the August 26, 2013 incident, "were recklessly or callously indifferent to the rights of its citizens in adopting their training and discipline practices, such that the failure to train reflects a deliberate or conscious choice by [the defendant municipal entities]." *Id.* ¶ 52.

It, therefore, appears that the plaintiff seeks to prove this failure-to-train claim by demonstrating deliberate indifference through a pattern of underlying constitutional violations.[4] While the plaintiff referenced a "pattern of training . . . deficiencies," he did not included any factual allegations relating to previous similar incidents where the defendants violated individuals' constitutional rights through the use of excessive force such that they would establish a pattern of violations. The plaintiff is merely paraphrasing the key language of *Monell* without providing any factual support to his assertions, and a "formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting

---

[4] Neither party mentions or addresses whether the "single-incident" approach to demonstrating deliberate indifference is applicable in this case. *See* City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989) ("the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights."). Therefore, the court declines to analyze whether the circumstances in this case fall within the approach stated in *City of Canton* at this time.

*Twombly*, 550 U.S. at 555)). The plaintiff's wholly conclusory allegations relating to a pattern of violations, without more specific factual allegations, are insufficient to demonstrate deliberate indifference. Because failure to demonstrate deliberate indifference is fatal to a failure-to-train claim, the court need not assess whether the plaintiff has alleged facts to establish the requisite causal nexus between the deliberate indifference and the injury to the plaintiff. Ultimately, the court finds that plaintiff cannot state a plausible claim for municipal liability under a failure-to-train theory.

Next, the second theory through which the plaintiff intends to establish a municipal liability claim is the Borough of Stroudsburg's failure to discipline its employees. (Compl., ¶ 51). Failure-to-discipline claims also require a showing of deliberate indifference, as outlined above, and the Third Circuit has more specifically stated that these claims "can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998).

In his Complaint, the plaintiff alleges that the discipline practices of the Borough of East Stroudsburg are inadequate in the following ways: "a) Allowance of a code of silence, which prevents incriminatory facts from being known to other Defendants Stroud Area Regional Police Department, Borough of East Stroudsburg, Attorney General of the Commonwealth of

22

Pennsylvania and the Commonwealth of Pennsylvania officers/agents and the public at large; b) Failure to discipline violations of Defendants Stroud Area Regional Police Department, Borough of East Stroudsburg, Attorney General of the Commonwealth of Pennsylvania and the Commonwealth of Pennsylvania General Orders; and c) Failure to discipline instances of improper use of excessive force." (Compl., ¶ 51). The plaintiff also alleges that the discipline practices, like the training practices, "reflect[] a deliberate or conscious choice by [the defendant municipal entities]" to be indifferent to the constitutional rights of its citizens. *Id.* ¶ 52. Finally, the plaintiff claims that the pattern of "discipline deficiencies was so pervasive as to constitute 'customs' with the force of law." *Id.* ¶ 53. Again, the plaintiff attempts to show deliberate indifference through a pattern of disciplinary actions that violate constitutional rights. The court finds that its analysis of the plaintiff's failure-to-train claim, above, applies similarly to this claim. The Complaint fails to identify who, within the municipality, was complicit in allowing a "code of silence," what official orders were violated, or provide an instance when an improper use of excessive force went undisciplined. Without including any additional factual allegations identifying or referring to any incidents of unconstitutional discipline or failure to discipline employees in the past, the plaintiff does not establish a pattern of violations and cannot satisfy the requirements for a showing of deliberate indifference. The plaintiff also fails to allege any facts that would establish "contemporaneous knowledge of the offending incident" as articulated by the Third Circuit in *Montgomery v. De Simone.* 159 F.3d at

127. Therefore, this court finds that the plaintiff fails to adequately allege a claim for municipal liability based on failure-to-discipline because he has not plead facts sufficient to establish deliberate indifference and therefore cannot state a plausible claim for relief.

### 2. Count IV – Widespread and Persistent Pattern of Unconstitutional Conduct

In Count IV of the complaint, the plaintiff also seeks to impose municipal liability by claiming that the Borough of East Stroudsburg permitted a widespread and persistent pattern of unconstitutional conduct. (Compl., ¶¶ 56-61). More specifically, the plaintiff states that there were unwarranted uses of excessive force, the excessive force was committed by officers employed by the Borough of East Stroudsburg, and that the municipal defendant exhibited deliberate indifference or tacit authorization of the pattern of misconduct. *Id*. The plaintiff then asserts that these actions amount to a "custom" as required for *Monell* liability. The difference between this claim and those in Count III is that in Count III the plaintiff alleges that a custom exists relating to the municipality's *failure* to act, whereas, here in Count IV, the plaintiff asserts that a custom exists relating to the municipality's *affirmative* actions that violate citizens' Fourth Amendment rights. Despite the difference, the plaintiff repeats much of the same language used in Count II.

As stated above, a custom exists when "practices of state officials [are] so permanent and well settled as to virtually constitute law." Kean v. Henry, 523 Fed. Appx. 879, 881 (3d Cir. 2013). To prove a custom, it must be shown

that an official "is responsible . . . through acquiescence, for the custom." *Id.* (citing Chambers v. Sch. Dist. Of Phila. Bd. Of Educ., 587 F.3d 276, 193 (3d Cir. 2009)). Thus, similar to the failure-to-train and failure-to-discipline claims above, the plaintiff must demonstrate that the municipality had knowledge of the affirmative violations, and acquiesced to such violations.

Again, the plaintiff fails to allege a single instance, outside of the incident giving rise to his own Complaint, to support his claim that there was a pattern of unconstitutional conduct. Moreover, there are no factual allegations supporting a finding that the Borough of East Stroudsburg had notice of the alleged misconduct or acquiesced to such misconduct; the plaintiff only summarily mentions that the Borough "exhibited deliberate indifference to, or tacit authorization of, this pattern of misconduct despite notice of the same to . . . Borough of East Stroudsburg." (Compl., ¶¶ 58). This is a conclusory statement, and the court need not consider it for the purpose of deciding the instant motion to dismiss.

Ultimately, like Count III, the plaintiff's assertions fall short of adequately pleading enough facts to support an actionable *Monell* claim. The near complete lack of factual allegations fails to raise the plaintiff's right to relief above a speculative level, as is required for a claim to survive a motion to dismiss. Accordingly, this Court will dismiss Count IV of the Complaint as it relates to the Borough of East Stroudsburg.

## IV.     CONCLUSION

In light of the foregoing analysis, the court will **GRANT IN PART** and **DENY IN PART** the Partial Motion to Dismiss filed on behalf of SARPD, the Borough of East Stroudsburg, and Officers Shelly and Strunk. (Doc. 3). The court will grant the motion to dismiss Counts III and IV, against the Borough of East Stroudsburg, and dismiss SARPD from the case. Finally, the court will deny the defendants' motion to dismiss Count I. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: August 23, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-2292-01.wpd

26